UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LENNY JAVIER,<br><br>                                    Plaintiff,<br><br>                    -against-<br><br>NEW YORK CITY TRANSIT AUTHORITY,<br>METROPOLITAN TRANSPORTATION<br>AUTHORITY, and HOPETON KIFFIN<br><br>                                    Defendants. | Case No: 22-cv-11010<br><br>COMPLAINT<br><br>PLAINTIFF DEMANDS A<br>TRIAL BY JURY |

Plaintiff, by her attorneys, ROTH & ROTH, LLP., complaining of the Defendants, respectfully allege, upon information and belief:

## I. Preliminary Statement

1.      Plaintiff, LENNY JAVIER, files this complaint against Defendants NEW YORK CITY TRANSIT AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY and HOPETON KIFFIN.  Plaintiff sustained severe injuries as a result of Defendants' negligence.

2.      Plaintiff sustained severe injuries as a result of Defendants' negligence in failing to implement necessary safety precautions on subway platforms.

3.      Defendants negligently designed, constructed, maintained, inspected, owned, operated, managed, controlled, altered, rehabilitated, the subject subway station, and stations systemwide, and their platforms, tracks/track beds, and trains/train cars, and said negligence was a proximate cause of Plaintiff's injuries.

4.      Plaintiff sustained severe injuries because of Defendants' negligence in allowing trains to enter the subject station, and stations systemwide, at an excessive rate of speed.

5.      Defendants' train operator/conductor/motor-person was negligent and failed to pay proper attention, and failed to see what was there to be seen.

6.      Defendants' train operator/conductor/motor-person negligently operated the train at an excessive rate of speed, and failed to slow down the train; causing the train to contact Plaintiff's body and severely injure Plaintiff; and said negligence was a proximate cause of Plaintiff's injuries.

7.      A person pushed/shoved or had contact with Plaintiff, and the Defendants' train had contact with Plaintiff's body, resulting in serious, severe and permanent personal injuries to Plaintiff.

8.      Plaintiff was injured because Defendants failed to take proper and adequate precautions to protect Plaintiff from the known problem of criminals and/or mentally unstable people pushing other members of the subway riding public onto the subway tracks and/or into moving subway trains; such precautions include, but are not limited to, installing platform edge barriers on the subway platform, or taking other adequate and proper safety measures.

9.      Defendants' negligence was a proximate cause of Plaintiff's injuries.

10.     Defendants have been on notice that over a hundred people every year sustain severe and permanent injuries as a result of their negligent failure to install platform edge barriers or any other safety technology/devices/equipment/appliances.

11.      Defendants have been on notice that over a hundred people every year sustain severe and permanent injuries as a result of their negligent failure to lower/decrease the entry speed of their trains into the subject train station and throughout their entire subway system.

12.     A reasonable mass transit system on notice of the recurring issue/problem of its' trains hitting/striking/running over/making contact with people would have taken prompt and proper corrective action prior to the subject incident to prevent, reduce or mitigate the number of such incidents and/or the severity of the injuries sustained in such incidents.

13.     Installation of platform edge barriers or other safety technology/devices/equipment/appliances installed at/in its train stations before the subject incident would have been reasonable.

14.     Reducing entry speed of trains into the subject station and systemwide before the subject incident would have been reasonable.

15.     Defendants could have had platform edge barriers or other safety technology/devices/equipment/appliances installed at/in its train stations before the subject incident and could have done so at little or no cost to Defendants.

3

16.     It was feasible to install platform edge barriers or other safety technology/devices/equipment/appliances installed at/in its train stations before the subject incident.

17.     It was feasible to lower/reduce/decrease the entry speed of trains entering the subject station and system wide before the subject incident.

18.     Defendants have been aware and have known of the benefits and safety benefits to having a homogenous train system with homogenous trains, for over 30 years.

19.     Defendants have issued design specifications for the manufacture of its trains and ordered production and manufacture of trains for over 30 years.

20.     Defendants have failed to design, order or manufacture homogenous trains.

21.     It would have been reasonable for Defendants to have designed, ordered or manufactured homogenous trains prior to the subject incident.

22.     It was feasible for Defendants to have designed, ordered or manufactured homogenous trains prior to the subject incident.

23.     Defendants' failure to act reasonably in the face of a known danger was a proximate cause of Plaintiff's injuries.

## II. The Parties and Jurisdiction

24.     Jurisdiction is conferred upon this Court by 28 U.S.C. 1332(a)(1).

25.     Plaintiff Lenny Javier was and is a resident of the State of New Jersey.

26.     Defendant, New York City Transit Authority was and still is a Public Authority duly organized under and by virtue of the laws of the State of New York, with offices at 130 Livingston Street, Brooklyn, New York, 11201.

27.     Defendant, New York City Transit Authority (NYCTA or Transit), was and still is a public benefit corporation duly organized under and by virtue of the laws of the State of New York, with offices at 130 Livingston Street, Brooklyn, New York, 11201.

28.     Defendant, Metropolitan Transportation Authority (MTA), was and is a Public Authority duly organized under and by virtue of the laws of the State of New York, with offices at 2 Broadway, New York, New York, 10017.

29.     Defendant, Metropolitan Transportation Authority, was and is a public benefit corporation duly organized under and by virtue of the laws of the State of New York, with offices at 2 Broadway, New York, New York, 10017.

30.     Defendant HOPETON KIFFIN was and is an employee of the NYCTA which is a New York State public benefit corporation, and upon information and belief resides in New York State.

31.     There is complete diversity of citizenship between plaintiff and defendants.

32.     The amount in controversy between the parties exceeds the sum of $75,000 exclusive of interest and costs.

### III. Conditions Precedent

33.     On December 13, 2021, and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof was duly served on the Plaintiff's behalf on the NEW YORK CITY TRANSIT AUTHORITY and the  METROPOLITAN TRANSPORTATION AUTHORITY (Authorities) and that thereafter said Defendants refused or neglected for more than thirty (30) days and up to the commencement of this action to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

34.     That on March 16, 2022, an examination under oath  was held remotely via Zoom meeting pursuant to the Public Authorities Law section 1212, with the Defendants NEW YORK CITY TRANSIT AUTHORITY, and the METROPOLITAN TRANSPORTATION AUTHORITY counsel, or their designated agent.

35.      More than thirty (30) days have elapsed since said Notice of Claim was filed and the New York City Transit Authority has failed to pay or adjust the claim.

36.      More than thirty (30) days have elapsed since said Notice of Claim was filed and the Metropolitan Transportation Authority has failed to pay or adjust the claim.

37.     This action is being commenced within one year and 90 days after accrual of this cause of action, or within the time allowed by law.

## IV. Facts

38.     On October 4, 2021, Plaintiff was lawfully present on the northbound "1,2,3" subway platform at the 42nd Street Times Square subway station in Manhattan. (the "premises")

39.     On October 4, 2021, a mentally ill individual pushed Plaintiff, and contributed to contact by the train with Plaintiff, who was struck by a moving northbound subway train (hereinafter where applicable referred to as "the incident").

40.     Plaintiff did not contribute to the happening of this incident.

41.     But for the Defendants' negligence, there would have been no contact between Defendants' train and Plaintiff's body.

42.     The incident would have been prevented if the Defendants had installed platform edge barriers or other safety devices/ equipment/ technology at the premises prior to October 4, 2021.

43.     The incident would have been prevented and the damages would have been mitigated had the train entered the station at a lower speed.

44.     The New York City Transit Authority had a non-delegable duty on October 4, 2021 to keep the subway system safe for its customers.

45.     The New York City Transit Authority and MTA, according to their own signs and published statistics, have been on notice that in the last 30 years approximately 1,600 people have been killed, and more than 5,000 have struck, by their subway trains.

46.     People who are struck by trains often suffer catastrophic injuries or are killed.

47.     For at least the last 30 years the New York City Transit Authority and MTA's office of system safety have collected data and reports for incidents where people are injured because of being  contacted or stricken or hit or run over by moving subway trains.

48.     For at least the last 30 years the New York City Transit Authority and MTA's office of system safety have collected data and reports for incidents where people are injured because of being  contacted or stricken or hit or run over by moving subway trains after being pushed/shoved and/or falling onto the subway tracks.

49.     For at least the last 30 years the New York City Transit Authority and MTA's office of system safety have collected data and reports for incidents where people are injured because of being  contacted or stricken or hit or run over by moving subway trains after being pushed/shoved and/or falling into the subway cars/trains.

50.     The New York City Transit Authority and MTA are required to report information to federal and state oversight agencies, for/ about/ regarding/ related to incidents where people are injured because of being pushed/shoved and/or falling onto the subway tracks, and/or having contact with or being run over or stricken by moving subway trains.

51.     The number of aforementioned deaths, train strikes and extent of injuries/ catastrophic injuries would have been prevented, or reduced and/or mitigated had the New York City Transit Authority installed some sort of platform edge protection prior to October 4, 2021.

52.     The number of aforementioned deaths, train strikes and extent of injuries/ catastrophic injuries would have been prevented or reduced and/or mitigated had the New York City Transit Authority installed some sort of safety device, such as Track Intrusion Device (TID) or CCTV warning/safety system  prior to October 4, 2021.

53.     The number of aforementioned deaths, train strikes and extent of injuries/ catastrophic injuries would have been prevented or reduced and/or mitigated had the New York City Transit Authority and MTA adopted safe and reasonable speed policies for customers safety for trains entering stations prior to October 4, 2021.

54.     The number of aforementioned deaths, train strikes and extent of injuries/ catastrophic injuries would have been prevented or reduced and/or

mitigated had the New York City Transit Authority and MTA adopted a policy of slowing trains down and reducing their speed when they enter the stations prior to October 4, 2021.

55.     Since the Air Train commenced operations at JFK Airport, utilizing platform edge barriers, no passengers have been struck by trains at JFK Airport .

56.     Since the Air Train commenced operations at JFK Airport, utilizing platform edge barriers, no passengers have been dragged by trains at JFK Airport.

57.     Since the Air Train commenced operations at JFK Airport, utilizing platform edge barriers, no passengers have been killed by trains at JFK Airport.

58.     Since the Air Train commenced operations at JFK Airport, utilizing platform edge barriers, no passengers have been seriously injured by trains at JFK Airport.

59.     Since the Air Train commenced operations at JFK Airport, utilizing platform edge barriers, no passengers have been injured by trains at JFK Airport.

60.     If the New York City Transit Authority and MTA had installed platform edge barriers or other similar safety devices at the premises herein, Defendants' train  would not have come into contact with Plaintiff.

61.     If Defendants had installed TIDs or CCTV or other similar safety devices at the station herein, Defendants' train would not have made contact with Plaintiff.

62.     The New York City Transit Authority and MTA disregarded the recommendation of some of its engineers to install platform edge safety technology prior to the incident.

63.     Defendants disregarded the recommendation of some of its engineers to install TIDs prior to the incident.

64.     Defendants disregarded the recommendation of some of its engineers to install CCTV prior to the incident.

65.     Prior to the subject incident, requests have been made to reduce the entry speed of Defendants' trains entering its subway stations.

66.     Defendants disregarded the recommendation to reduce the entry speed of Defendants' trains entering its subway stations.

67.     Prior to the date of this incident the Defendants failed to conduct adequate and proper safety studies on how to prevent, reduce and/or mitigate the number of people being struck or contacted or run over by trains.

68.     Prior to the date of this incident the Defendants failed to conduct adequate and proper safety studies on how to prevent, reduce and mitigate the severity of injuries sustained by people struck or contacted or run over by trains.

69.     Prior to the date of this incident the Defendants failed to conduct a pilot to assess the feasibility, effectiveness and operation on how to prevent, reduce and mitigate the severity of injuries sustained by people struck or contacted or run over by trains.

11

70.     Prior to the date of this incident, international best practices called for proper safety devices, such as platform edge barriers, and/or TIDs, and/or CCTV, and/or other safety devices/equipment/technologies/methods/means to be installed/implemented in order to prevent/reduce and/or mitigate the number of persons contacted by trains.

71.     Prior to the date of this incident, international best practices called for proper safety devices, such as platform edge barriers, TIDs, CCTV, and other safety devices/equipment/technologies/methods/means to be installed/implemented in order to prevent/reduce and/or mitigate the severity of injuries of persons contacted by trains.

72.     The Defendants have attempted to shift their nondelegable duty to keep their subway stations safe to the general public through a purported signage program, which indicates that if someone looks sick or intoxicated, members of the public should assist the person to try to stop them from falling into the tracks.

73.     Defendants were aware or should have been aware that the program/ steps/ measures it undertook were ineffective at preventing/ reducing/ mitigating the number of persons contacted or struck or hit or run over by trains.

74.     Defendants were aware or should have been aware that the program/ steps/ measures it undertook were ineffective at preventing/ reducing/ mitigating the severity of injuries sustained by persons contacted or struck or hit or run over by trains.

12

75.     The New York City Transit Authority was aware based upon more than 30 years of statistics prior to the incident where Plaintiff was pushed onto the tracks and struck by the train, that it was more likely than not, that innocent people, such as the Plaintiff, would be struck or contacted or hit or run over by subway trains if the New York City Transit Authority  did not put in Platform edge barriers or other protections in their subway system.

76.     The Metropolitan Transportation Authority was aware based upon more than 30 years of statistics prior to the incident where Plaintiff was pushed onto the tracks and struck by the train, that it was more likely than not, that innocent people, such as the Plaintiff, would be struck or contacted or hit or run over by subway trains if the Metropolitan Transportation Authority did not put in Platform edge barriers or other protections in their subway system.

77.     Upon information and belief, platform edge doors, gates, barriers, rope barriers and other technologies, devices, equipment, means and methods have been known to the Defendants for more than 30 years prior to the Plaintiff being injured, and the Defendant Authorities chose to ignore or violate or breach their obligation to the public as well as the Plaintiff by failing to properly and timely take proper and adequate corrective action to properly, timely and adequately address or remedy this known hazard of people being killed or seriously harmed by contact with trains.

78.     The Defendants have violated or breached their nondelegable duty to ensure the safety of the subway riding public by failing to install platform safety devices.

79.     The Defendants have violated or breached their nondelegable duty to ensure the safety of the subway riding public by failing to install platform edge doors, gates, barriers, rope barriers and/or other technologies, devices, equipment, means and methods.

80.     One of the reasons the Defendants have breached or violated their nondelegable duty to ensure the safety of the subway riding public (by failing to install platform safety devices or equipment or technology or other safety equipment/devices, means and methods) is because it costs Defendants less money to defend against claims brought by or on behalf of people killed or injured by contact with or being stricken by or run over by trains, than to take proper, timely and adequate corrective action to address and remedy this known hazardous and recurring condition/problem.

81.     The Defendants have breached or violated their nondelegable duty to ensure the safety of the subway riding public by failing to install TIDs and/or CCTV in their subway system.

82.     The Defendants have violated or breached their nondelegable duty to ensure the safety of the subway riding public by failing to lower/ reduce/ decrease the entry speed of their trains entering subway stations.

14

83.    Because the Defendants have acted unreasonably and failed to conduct adequate, timely and proper safety studies, they are not entitled to the affirmative defense of qualified immunity.

84.    Any and all allegations that are made herein as against the New York City Transit Authority also apply to Defendant Metropolitan Transportation Authority.

### V. Causes of Action

### FIRST CAUSE OF ACTION
### NEGLIGENT DESIGN, MAINTENANCE AND OPERATION

85.    All preceding and subsequent paragraphs are incorporated by reference.

86.    That on October 4, 2021, and at all times herein mentioned, a subway platform, subway tracks, and subway station existed in the County of NEW YORK, City and State of New York at the Manhattan northbound "1,2,3" subway line at 42nd Street – Time Square station, NEW YORK, New York (hereinafter referred to as the premises).

87.    That on October 4, 2021, and at all times herein mentioned, Defendants owned, operated, managed, controlled, inspected and maintained their aforementioned premises, including but not limited to said station, platforms, tracks/track beds, and trains/train cars.

88.     That on October 4, 2021, Defendants owned, managed, maintained, controlled, and operated a subway train traveling northbound along the "1,2,3" subway line, at 42nd Street – Time Square station, County of NEW YORK, City and State of New York, and that said train struck the Plaintiff on the northbound track of the aforementioned premises.

89.     That on October 4, 2021, and at all times herein mentioned, Defendants had the duty to properly design, construct, inspect, operate, alter, rehabilitate/renovate and maintain the premises including but not limited to said station, platforms, tracks/track beds, and trains, in a reasonably safe condition.

90.     That on October 4, 2021, and at all times herein mentioned, Defendant HOPETON operated a subway train that was owned by the defendants NYCTA and/or MTA at the aforementioned subway station.

91.     Defendants breached their duty to Plaintiff and to the subway riding public by failing to design and maintain the premises, including but not limited to said station, platforms, tracks/track beds, and trains in a reasonably safe condition.

92.     Defendants breached their duty to Plaintiff and to the subway riding public by failing to install any safety devices to prevent contact between its trains and its passengers, and to prevent said passengers from being pushed or falling onto the tracks, such as Platform Edge Doors, Platform Gates, rope barriers or fixed handrails, TIDs, CCTV or other safety devices which Transit is aware of and Plaintiff is as of yet unaware of.

16

93.     Plaintiff was caused to be injured by reason of the negligence, gross negligence, carelessness and recklessness of the Defendants and their wanton and willful disregard for the safety of the public as well as the Plaintiff herein. NYCTA and the MTA, their agents, servants and/or employees,  negligence, carelessness and recklessness consisted of the following, among other things: the negligent ownership, maintenance, operation, design, upkeep, alteration, renovation, rehabilitation of their subway stations, platforms, platform edges, tracks/track beds and subway platform edge, trains/train cars; in failing to keep proper reasonable control of the speed and control of their subway trains, and in allowing/permitting/causing said trains to be operated at an excessive rate of speed in entering stations;  in failing to keep and maintain the aforesaid subway train under proper, reasonable, lawful, speed and control; in causing, permitting, allowing the subway train to be negligently operated so as to cause and permit it to seriously injure the Plaintiff;  in failing to keep and maintain a proper lookout and watch and see what was there to be seen and avoid having contact with Plaintiff; in failing to slow the train down to a safe speed entering the subway station; in failing to adequately and properly study the hazards relating to the speed trains enter the station, and failing to do a pilot for same,  and set a safe speed policy for trains entering the subway station to protect people on the platform and prevent them or reduce mitigate them from coming into contact with a moving subway train; in failing to follow good and accepted and best transportation practices and procedures for studies, hazard analysis and root cause analysis in assessing what the effects would be of implementing any safety technology compared with leaving the system in the same dangerous condition; in violating US MIL Standard 882 a-e by allowing, permitting, causing and

17

being aware of the existence of an extreme hazard of unprotected platform edges and failing to take proper, adequate and timely corrective actions known to be effective to prevent people from coming into contact with subways; in failing to take the necessary safety precautions to protect customers from being shoved or pushed into a moving subway train;  in making false representations as to the effects of slowing down trains to the applicable oversight boards, agencies and councils to falsely claim that it would cause further injuries without undertaking any studies whatsoever for same; in failing to take proper, timely and adequate steps to protect innocent victims from a known problem of criminal and mentally unstable people pushing people into or in front of moving train; in failing to use good and accepted safety practices, safety technology, platform edge doors, platform edge protection, platform edge detection, warnings for passengers and Plaintiff that trains are entering the station; relying on outdated, inadequate and unsafe speed policies; in failing to utilize modes and procedures available to any and all transportation authorities to protect people from being struck on the platform and or being pushed onto the tracks or into a moving subway train; in failing to set up proper safeguards and barriers for passengers waiting for the trains; in failing to properly promulgate proper rules and regulations; in failing to set up proper and adequate training programs; in failing to properly and adequately train its operators, motormen and conductors, including but limited to Defendant HOPETON KIFFIN; in failing to place proper and adequate warnings, markers, lines, or set proper areas that people could stand behind to protect them and the Plaintiff from being pushed and struck by incoming trains; in failing to conduct adequate and proper and timely safety studies or heed studies from other countries that Defendants were aware of to set a safe distance

18

for passengers to wait for incoming trains;  in failing to conduct proper adequate and timely safety studies for the protection of customers; in failing to properly maintain and design the platform, its support/supporting structures and needs, and electrical and other necessary infrastructure needs; and in the negligent and careless hiring, training and re-training of the personnel employed by the NYCTA and the MTA.

94.   Upon information and belief, platform edge doors, gates, barriers and/or other safety devices/ equipment/ technology, means and methods have been known to the Defendants for more than 30 years prior to the Plaintiff being injured, and the Defendants chose to ignore its obligation to the public as well as to the Plaintiff and they have turned their back on safety.

95.   The Defendants have violated or breached  their non-delegable duty for public safety and continues to allow families and lives to be destroyed despite having notice of the danger and their having knowledge of available means to eliminate or greatly reduce the danger.

96.   The Defendants, despite being aware of the dangers to the public for people being struck by subway trains that are on the platforms or track for more than 30 years prior to the incident herein and despite knowing that in other subway systems around the world these technologies are working effectively, the Defendants nevertheless attempt to  avoid its responsibility for this incident by asserting the affirmative defense of immunity.

19

97.     Defendants' breach of their duty to design, own, manage, inspect, renovate, alter, rehabilitate, control, operate and maintain the premises, including but not limited to its stations, platforms, tracks, track beds and trains/train cars, in a reasonably safe condition, was a proximate cause of Plaintiff's injuries.

98.     Defendants were at all times acting under and by virtue of their proprietary functions and duties.

99.     Defendants are not entitled to any affirmative defenses that may be afforded to a municipality.

100.    Defendants are not entitled to any affirmative defenses of immunity that may be afforded to a municipality.

101.    Defendants are not entitled to any affirmative defenses of immunity that may be afforded to a municipality because they never conducted an adequate and proper safety study.

102.    Defendants set into motion, caused/created a hazardous condition.

103.    Defendants took positive control of a known and dangerous safety condition.

104.    Defendants had, owed and breached a special duty to Plaintiff.

105.    Defendants had a special duty to Plaintiff based on their knowledge of the hazards of their subway system.

106.    Plaintiff was a member of a protected class of persons and entitled to a special duty.

107.   The mentally ill person that pushed Plaintiff herein, was a member of a protected class of persons under a disability.

108.   In addition to the foregoing, Defendants were negligent in allowing Plaintiff  to come into contact with an incoming train; by failing to protect Plaintiff from being  pushed into said subway train and being  forcibly struck, maimed and injured by reason of the negligence, gross negligence, recklessness, carelessness, wanton and willful disregard for the safety of the public as well as the Plaintiff herein; NYCTA the MTA, their executives, agents, servants, employees and/or licensees were negligent in the ownership, operation, control and maintenance of the aforesaid subway train, subway station and subway platform; in negligently owning, designing, operating, maintaining, managing and controlling the subway train, subway tracks and subway platform thereat; in causing, allowing a known hazard to exist at the aforesaid location; in operating the train in a negligent, grossly negligent and careless manner; in entering the station at an unreasonable, unsafe and/or excessive rate of speed; in failing to provide a safe ingress/ egress for the subway station, platform and subway car; in failing to warn the Plaintiff by using the horn, a sound device, or announcement to warn anyone close to the edge of the platform including Plaintiff that a subway train was entering the station; in failing to have a proper speed policy for trains entering stations for the safety of people on the platform; in failing to properly study the speeds with which trains enter the subject station for the safety of passengers on the platform or who might

21

have fallen onto the tracks; in failing to utilize the data they have gathered over the years to implement a safety plan for this subway station to protect people from being struck or pushed into incoming trains, when Defendants knew or should have known that Plaintiff was in a position of danger and peril; in operating said subway train in a manner which unreasonably endangered the Plaintiff; in failing to properly operate, guide, manage and control the aforesaid subway train and its attendant subway cars.

109.    In addition to the foregoing, the NYCTA, the MTA, their agents, servants and employees were negligent in failing to operate the aforesaid subway train in a safe manner; in allowing and permitting the platform thereat to become and remain in a hazardous and dangerous condition; in failing to keep the platform of the aforesaid train in proper repair; in allowing Plaintiff to come into contact and be forcibly struck, and injured by reason that they were negligent, careless, reckless and grossly negligent in their failure to install/utilize platform edge doors, platform edge rails, platform edge walls, platform edge safety barriers, rope barriers, to prevent customers/passengers from tripping, slipping, falling, fainting and/or being pushed into the path of oncoming subway trains or being stuck by the trains while standing on the platform.

110.    In addition to the foregoing, the NYCTA and the MTA, were negligent, grossly negligent and conducted themselves with wanton and willful disregard for the safety of the public as well as the Plaintiff for failing to conduct adequate,

proper and timely design studies; in failing to conduct adequate safety studies, in presenting to their oversight agencies fraudulent, inaccurate and generally mischaracterizing data regarding persons who are struck by trains when analyzing data to determine whether or not to install platform edge safety devices and/or doors, railings and barricades or setting the speed policy for trains entering stations.  The NYCTA and the MTA, were negligent, careless, reckless and grossly negligent in their failure to heed advice, recommendations, and results of their own and other studies, reports, assessments, trends, meetings, and proposals to install and /or utilize platform edge doors, platform edge rails, platform edge walls, platform edge safety barriers, safety technology that is readily available of which the Defendants are aware and refuse to install into their subway system to prevent passengers from being pushed into oncoming  subway trains; Defendants failed to give adequate and proper training to its agents/servants/employees.

111.    As a result of the foregoing, Plaintiff suffered injuries and damages.

## SECOND CAUSE OF ACTION
## NEGLIGENT SPEED POLICY AND LINE OF CLEARANCE POLICY

112.    All preceding and subsequent paragraphs are incorporated by reference, and are deemed repeated, realleged and reiterated as if set forth at length herein.

113.    That on October 4, 2021, and at all times herein mentioned, Defendants owned and operated a subway train traveling northbound along the

23

"1,2,3" subway line, at 42nd Street – Time Square station, County of NEW YORK, City and State of New York.

114.    That on October 4, 2021, and at all times herein mentioned, Defendants designed, owned, operated, managed, maintained and controlled a subway train that struck the Plaintiff on the northbound track of the aforementioned premises.

115.    That on October 4, 2021, and at all times herein mentioned, the subway train that struck plaintiff was traveling at an excessive rate of speed.

116.    That on October 4, 2021, and at all times herein mentioned, the subway train that struck plaintiff was traveling at an excessive rate of speed, pursuant to Defendants' official policies and practices.

117.    That on October 4, 2021, and at all times herein mentioned, the subway train that struck plaintiff was traveling at an excessive rate of speed, pursuant to Defendant train operator's HOPETON KIFFIN's negligence.

118.    Defendant HOPETON KIFFIN operated said train in an unsafe manner; failed to pay proper and reasonable attention; failed to see what was there to be seen; failed to keep proper and safe control of said train; operated said train at an excessive and unsafe speed; failed to stop said train in time to avoid contact with or hitting Plaintiff herein.

119.    On or prior to October 4, 2021, the Defendants did not have a proper and adequate peed policy for trains entering their stations in their subway system.

24

120.   On or prior to October 4, 2021, the Defendants did not have a proper and adequate speed policy for trains as they entered this specific station.

121.   On or prior to October 4, 2021, the Defendants train operator Hopeton Kiffin was directed to enter the train station as fast as possible, so long as he could bring the train to a stop at the train marker.

122.   On October 4, 2021, the Defendants never properly and adequately studied what would be a safe speed for their train operators to enter their train stations for the customers in the station, on the platform or on the tracks .

123.   Prior to October 4, 2021, Defendants studied and were aware that the excessive rate of speed that trains entered the station supported a policy of permitting a hazardous condition—namely, an excessively large gap between the platform edge and the subway train. This excessively large gap is caused in part by the allowance of excessive speed of trains entering the station creating an alleged large amount of side-to-side sway by trains when entering the subway station. Defendants refused to analyze or change their conservative  clearance policy, which is much greater than other subway systems, despite the requests of their consultants to allow for a less conservative clearance, which would allow for the installation of platform edge barriers in areas where Defendants claim  that there is not enough room to install same.

124.   Defendants had and have an unnecessarily excessively conservative line of clearance for their trains creating an excessive gap space between the edge of

25

the stations' platform and the sill of the train car doors/train cars and an alleged impediment to the installation of platform edge barriers.

125.   Prior to October 4, 2021, the Defendants never conducted an adequate and proper safety study or pilot to determine the safe speed for trains to enter subway stations, to avoid striking passengers or avoid passengers being injured if they were pushed or shoved into said trains.

126.   Prior to October 4, 2021, the Defendants never conducted an adequate and proper safety study or pilot to determine the safe speed for trains entering the subject subway station where Plaintiff was injured, to avoid injuring passengers there were on the platform, fell on the tracks or were pushed or shoved into the trains.

127.   Defendants have not updated their speed policy for over 20 years, despite being on actual and constructive notice that customers sustain serious injuries and/or are killed due to the unsafe speed of the subway trains entering the station.

128.   Defendants have not taken any adequate and proper remedial or corrective action, despite being on actual and constructive notice that customers sustain serious injuries and/or are killed due to the unsafe speed of the subway trains entering the station.

129.   Defendants were negligent and violated their non-delegable duty to operate a safe subway system by failing to use scientific and engineering methods to determine safe speeds to operate trains.

130.   Defendants were negligent and violated their non-delegable duty to operate a safe subway system by failing to use US MIL Standard 882 a-e hazard analysis when determining their speed policy or lack of a speed policy and their line of clearance policy for trains entering the subway stations.

131.   Defendants were negligent and violated their non-delegable duty to operate a safe subway system by failing to use good and accepted transportation practices and procedures as well as standards such as US MIL 882 a-e hazard analysis when determining their speed policy or lack of a speed policy for trains entering this as well as all of their subway station as well as their line of clearance policy.

132.   Defendants were negligent for having an outdated and dangerous speed policy that was not based on adequate and proper scientific studies for safety of customers.

133.   Defendants breached their duty to keep Plaintiff safe by failing to implement a safe speed policy.

134.   Defendants breached their duty to keep Plaintiff safe by failing to implement a safe line of clearance policy.

27

135.   Defendants breached their duty to keep Plaintiff safe by failing to reevaluate their speed policy after being aware of thousands of people being injured by trains entering the station at maximum rate of speed when they could have avoided injuring or striking people by reducing the rate of speed of trains entering the stations.

136.   Defendants breached their duty to keep Plaintiff safe by failing to conduct a study to determine how many less people would have been struck, or injured if they had reduced the speed of trains entering their subway stations, despite knowing through their thorough investigations that train operators stated they were unable to stop "in time" to avoid contacting individuals on the platform or the tracks.

137.   Defendants after setting an alleged speed policy many years ago, failed to reevaluate their speed policy, conduct a pilot, conduct a study to see how a reduction of speed of trains entering the station would reduce the severity and number of people hit by their trains,  despite being aware of thousands of people being injured by trains entering the station at the maximum rate of speed.

138.   Defendants after setting an alleged speed policy many years ago, despite knowing that it was dangerous and that people were being killed and maimed, failed to change said speed policy because they knew they had previously been extremely successful in litigation by claiming immunity for their unsafe speed

policies and avoiding any financial responsibility for their dangerous and reckless speed policies.

139.    Defendants failure to adopt a safer speed policies was not based upon the safety, but their priority of speed without any consideration of customers  safety

140.    Defendants' breach of their duty was a proximate cause of Plaintiff's injuries.

141.    As a result of the foregoing, Plaintiff suffered injuries and damages.

**WHEREFORE** and in light of the foregoing, Plaintiff demands judgment, with interest, costs, fees and attorney's fees and on all claims for relief:

a.    Empanel a jury;

b.    Award compensatory and punitive damages;

c.    The Plaintiff demands the foregoing relief jointly and severally against all of the defendants;

d.    The limitations of CPLR Article 16 are not applicable herein;

e.    Order appropriate injunctive relief against Defendants, including, but not limited to installation of platform edge barriers and reduction of the speed at which trains enter subway stations; and

f.    Such other and further relief as the court may deem just and proper.

Dated: New York, New York
        December 31, 2022

Respectfully Submitted,

Roth & Roth, LLP.

_____~//s//~_____

David A. Roth
Audra R. Roth
Elliot D. Shields
*Co-Counsel for Plaintiff*
192 Lexington Avenue, Suite 802
New York, New York 10024
(212) 425-1020
droth@rothandrothlaw.com
aroth@rothandrothlaw.com
eshields@rothandrothlaw.com

SONIN & GENIS

_____~//s//~_____

Robert Genis
*Co-Counsel for Plaintiff*
One Fordham Plaza, Suite 907
Bronx, New York 10458
(718) 561-4444
bob.genis@soningenis.com