# Roth & Roth, LLP
192 LEXINGTON AVENUE, SUITE 802, NEW YORK, NEW YORK 10016
ROTHANDROTHLAW.COM T: (212) 425-1020 F: (212) 503-3248

October 26, 2023

**Via ECF**
Hon. Jessica G. L. Clarke, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *Javier v. New York City Transit Authority, et al.,* Civ. No.: 22-cv-11010 (JGLC)

Dear Judge Clarke:

The parties submit this joint letter to outline our disputes with respect to Defendants' responses to Plaintiff's discovery demands, pursuant to the Court's October 23, 2023 docket Order. The parties have met and conferred several times, including on May 26, 2023, June 1, 2023, and October 11, 2023. The most recent meet and confer lasted approximately two hours; however, there was no resolution, and so we were unable to complete the proposed scheduling Order.

**Plaintiff's Position**:

By way of background, this is a diversity action arising from an October 4, 2021 incident where Plaintiff was pushed into the side of a moving train by a mentally ill woman, causing her to sustain serious injuries. Customers being pushed into moving trains or onto the track bed is a recurring hazard. Defendants negligently failed to install platform edge safety barriers or take other appropriate action, such as slowing trains entering stations, to prevent the foreseeable harm of customers being pushed into trains or onto the tracks, and that said omission(s), and other negligent acts by defendants, were a proximate cause of Ms. Javier's injuries.

In their answer, Defendants raised numerous affirmative defenses, including "governmental function immunity, qualified immunity, judicial immunity, or any combination of these doctrines." (ECF 14 p. 18, Thirteenth Affirmative Defense).

On April 29, 2023, Plaintiff served her first Requests for Production of Documents, Interrogatories, and Requests for Admission. On May 16, 2023, Defendants served a letter claiming they planned to request a pre-motion conference with Judge Schofield in anticipation of filing a motion for a protective order. Defendants claimed that because Plaintiff's counsel represents the plaintiff in *Harger Da Silva v. New York City Tr. Auth*., 17-cv-04550 (EDNY) (FB) (VMS), where plaintiff allegedly asserted "nearly identical causes of action against the same defendants" and "the requested discovery is essentially the same in both cases", that they should be relieved of their obligations to respond to Plaintiff's discovery demands in this case.

1

This case and *Harger* are factually distinct and assert different legal claims. On May 19, 2023, Plaintiff served a letter in response, explaining that *Harger* had no bearing on this case, especially considering that the parties had numerous ongoing discovery disputes, including outstanding discovery motions that have not yet been decided by Judge Scanlon. Following service of our letter and a meet and confer, Defendants did not file a motion for a protective order.

On May 26, 2023, the parties had another meet and confer, where Defendants stated they needed another month to respond to Plaintiff's Requests for production of documents. Defendants sought leave from Judge Schofield for additional time to respond to Plaintiff's discovery demands (Docket # 32). Judge Schofield denied Defendants' request (Docket # 33).

On May 30, 2023, Defendants served their Responses to Plaintiff's Requests for Admission and Interrogatories, but not to Plaintiff's Requests for Production of Documents.

On June 20, 2023, Plaintiff served a letter detailing deficiencies in Defendants' responses to her Requests for Admission, which explained that Defendants' objection to many of the requests regarding subsequent remedial measures based on Fed. R. of Evid. 407 was meritless because the Second Circuit has consistently held that evidence of subsequent remedial measures is admissible to show feasibility of precautionary measures. Defendants have not reconsidered their objections.

On June 30, 2023, Defendants finally served a response to Plaintiff's Requests for Production of Documents, in which Defendants also asserted meritless objections to many of Plaintiff's discovery demands.

On October 11, 2023, the parties met and conferred regarding Defendants' discovery responses. First, Defendants have refused to work together on an ESI protocol.

Second, Plaintiff requested that Defendants respond separately to each sub part of the various Requests for Admission, but Defendants refused to do so.

Third, Defendants refused to amend their Rule 26 disclosures, which asserted they are "self-insured", which is inaccurate. Defendants are insured by First Mutual Transportation Assurance Company ("FMTAC"). Defendant NYCTA stated that they were not required to produce insurance information because it is wholly owned by the MTA, which is different than being "self-insured."

Defendants' Rule 26 disclosures are inadequate. The disclosure largely refers to "all documents exchanged in *Harger v NYTCA";* this does not comply with Rule 26. While Plaintiff's counsel also represents the plaintiff in *Harger*, there are ongoing disputes regarding defendants' discovery responses and productions. For example, in *Harger*, Defendants improperly redacted thousands of pages of relevant documents. There are also several outstanding discovery motions pending before Judge Scanlon. Moreover, Judge Scanlon's discovery rulings in *Harger* are not binding in this case, as a magistrate judge does not even have concurrent jurisdiction. Additionally, any limiting rulings in *Harger* had resulted from discovery deadlines and were not on the merits.

Fourth, Defendants refused to amend their responses to Plaintiff's Requests for Production of Documents. As mentioned above, Defendants chose to forego moving for a protective order regarding demands that allegedly overlap with discovery produced in *Harger*. Nevertheless, in response to at least 24 of the 89 demands, Defendants asserted meritless objections and refused to produce responsive documents, instead "referring" plaintiff to documents exchanged in *Harger*. (Responses to: 16b, 19, 20d, 21b, 22, 23, 25a-b, 26, 27, 37, 38, 39, 41, 44, 58, 61, 62, 65, 68, 75-76, 83, 86, 89). The disputes over the responses in the 89 individual requests are too numerous to list here, but generally Defendants have not produced any documents relating to their immunity defenses that were not exchanged in *Harger*. Additionally, an example of a question and response that is typical of our dispute where the response is essentially in Plaintiff's opinion a non-response:

**RFP Request No. 45:**
Produce all documents identifying the date the decision for the installation of the elevator(s) and stairways installed after the ADA[1] went into effect at the subject station.

**RESPONSE**: See Response to Request No. 23. – referring to *Harger* documents which is at a completely different station although they do claim they are still looking for additional documents since the demands was served in April.

Fifth, Defendants have refused to produce any information regarding "track intrusions" (unauthorized people on the tracks), without explanation. This data was not exchanged in *Harger*.

Lastly, Defendants' Interrogatory responses are deficient. For example, Interrogatory 2 asked, "Identify the Defendants employees who would be most knowledgeable about the yearly payouts in litigation for "12-9" incidents"; Defendants responded that employees of the MTA's law department were most knowledgeable. This response is deficient because it fails to identify any specific individuals. Similarly, Interrogatory 3 asked for the identities of members of the "Trespass Task Force" and all other task forces that studied how to prevent people being struck by trains; in their response, Defendants only identified one person and listed six other task forces without identifying the members. Interrogatory 4 is targeted at ESI; Defendants refused to answer, and instead pointed to a Rule 30(b)(6) deposition in *Harger* on Defendants' electronic storage systems, which was the subject of two motions because the deponent was not knowledgeable, and Defendants failed to prepare him to testify on the topics listed in the Rule 30(b)(6) notice.

**Defendants' Position**:

FRCP Rule 26(b) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, *the parties' relative access to relevant information*, the parties' resources, *the importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit." [Emphasis added.] The rule was amended "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry" (FRCP Rule 26(b), Notes of Advisory Committee on Rules—1983 Amendment).

---
[1] Defendants claim that the ADA restrictions somehow precluded installation of barriers at the within station

> [T]he spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake. *Id*.

Plaintiff's counsel's current demands, which seek material that is already in their possession, clearly violates this rule. As noted by counsel, the same claims and defenses that are raised herein were raised in *Harger v NYTCA,* a matter that is currently pending in the EDNY. That litigation resulted in the production of over 60,000 documents, 15 deposition witnesses, and an additional thousands of documents obtained from Defendants' contractor, STV, pursuant to a subpoena. Plaintiff has even referred to some of those produced documents in her recent demands. Plaintiff's counsel has also commenced actions in state court raising the same claims (*see, e.g., Ortega v NYCTA*, Supreme Court, NY County, 502824/2016).

Defendants do not assert that plaintiff is not entitled to any new discovery in this action. Indeed, Defendants have produced documents that are unique to this case and has advised counsel that it is continuing its search for other relevant documents. But plaintiff's demands fail to even attempt to "fill in the gaps" regarding documents he claims he now needs or did not request in his other pending actions.

For example:

*Javier v NYCT*, First Request for Production of Documents, Request 56:

Produce all communications and meeting notes related to the PowerPoint document, "New York City Transit Safety Program and Culture," dated February 2014, Bates No. 1354–1396.

*Harger v NYCT*, Third Request for Production of Documents, Request 35:

Produce all communications and meeting notes related to the PowerPoint document, "New York City Transit Safety Program and Culture," dated February 2014, Bates No. 1354-1396.

*Ortega v NYCT*, First Demand for Discovery of Documents, Demand 49:

Produce all documents containing the date used and relied upon to create the PowerPoint document, "New York City Transit Safety Program and Culture," dated February 2014.

*Javier v NYCT*, First Request for Production of Documents, Req. 44 (a), (b), (c):

Produce all documents generated by the members of the Platform Screen Door Taskforce ("PSDTF") relating to any solutions to eliminate or mitigate the number and severity of the injuries of people being contacted by trains; Produce documents that identify all of the members of the New York City Transit Platform Door Task Force; Produce all documents relating to aforementioned tasks force regarding platform edge safety.

*Harger v NYCT*, Third Request for Production of Documents, Req. 9(a), (b), (c)

Produce documents that identify the members of the Platform Screen Door Taskforce ("PSDTF"); Produce all documents that identify the members of the New York City Transit Platform Door Task Force; Produce all documents relating to aforementioned tasks force regarding platform edge safety.

*Ortega v NYCT*, First Demand for Discovery of Documents, Demand 34:

Produce all documents and communications created by the Platform Screen Door Task Force (PSDTF) or in any was related to the work of the PSDTF.

Clearly, the same demands will get the same results. However, plaintiff's counsel's repetitive demands and their possession of the requested material is clearly what FRCP Rule 26(b) was designed to prevent.

Regarding insurance, FMTAC is a wholly owned captive insurer of the MTA. Captive insurance is a form of self-insurance. Any liabilities are funded by the MTA. As such, Defendants' disclosure is accurate. Regardless, the purpose of an insurance disclosure is to "enable counsel for both sides to make the same realistic appraisal of the case" (FRCP Rule 26, Notes of Advisory Committee on Rules—1970 Amendment). Plaintiff's counsel, who has represented plaintiffs in suits against the MTA/NYCTA for at least the past 15 years, has not claimed that Defendants' disclosure prevents such an appraisal. Insurance disclosures may also be limited by Rule 26(b).

Plaintiff's counsel also object to Defendants' assertion of FRE Rule 407 in response to some of their Request for Admission. However, the requests go beyond what Defendants claim was infeasible at the subject station--platform screen doors, as opposed to safety plans or studies.

Finally, regarding ESI, in *Harger v NYCTA*, defendants searched 22 custodians who were designated by plaintiff and reviewed over 3 million documents hits based on plaintiff's search terms, and date ranges. This required almost a year to complete at a ***significant*** cost to Defendants. Plaintiff has not provided any reason why a further ESI production is necessary. Moreover, any additional ESI would be disproportionate to the needs of the case.

The parties respectfully request to discuss the above issues at the October 31, 2023 conference, along with any other issue that could not be fully mentioned above, in an attempt to resolve these issues without making motion. If we are unable to resolve these issues, then Plaintiff requests that the Court permit Plaintiff to file a discovery motion and Defendants request permission to file a motion for a protective order and to set a briefing schedule.

Respectfully submitted,

Elliot D. Shields

cc: Andrew P. Keaveney
*Attorney for Defendants*

Bob Genis
*Co-counsel for plaintiff*